*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

JOSEPH D. FAIL ENGINEERING COMPANY, INC.,

        Plaintiff/Counterdefendant-Appellant,

v

CRYSTAL AUTOMATION SYSTEMS, INC., doing business as CASAIR, INC.,

        Defendant/Counterplaintiff-Appellee.

UNPUBLISHED
July 13, 2026
8:56 AM

No. 367301
Montcalm Circuit Court
LC No. 2019-025889-CK

---

Before: ACKERMAN, P.J., and REDFORD and FEENEY, JJ.

PER CURIAM.

Plaintiff/counterdefendant Joseph D. Fail Engineering Company, Inc. (JDF) sued defendant/counterplaintiff Crystal Automation Systems, Inc. (Casair) for payment following an engineering project. Casair countersued because of purported issues with the project. A jury rejected Casair's claim for breach of contract but found that JDF was liable for professional negligence and awarded $1.5 million in damages. The trial court, however, granted judgment notwithstanding the verdict and reformed the verdict to ascribe the damage award to Casair's breach of contract claim. On appeal, JDF argues that the trial court erred by failing to bar Casair's claims under the statute of limitations, by granting Casair's motions for partial summary disposition and for judgment notwithstanding the verdict, and by denying JDF's motion for new trial on the basis of the damages award. We reverse the trial court's reform of the jury verdict and otherwise affirm.

## I. BACKGROUND

Under the American Recovery and Reinvestment Act, PL 111-5; 123 Stat 115, the federal government appropriated funds for the U.S. Department of Agriculture's Rural Utilities Service (RUS) to subsidize the deployment of improved internet service in rural areas. Casair, an internet service provider headquartered in Stanton, received funds from this program to finance an approximately 400-mile fiber-optic cable project in central Michigan. After receiving that money, Casair initially hired Midstate Engineering to design the project but became dissatisfied with its

-1-

services. Casair entered into a "Post Loan Engineering Services Contract" with JDF in 2012 for JDF to take over from Midstate as the professional engineer on the project. JDF, in turn, hired FiberSmith to act as resident engineers, inspecting the work completed by construction crews from hired contractors.

There were various issues with the project, including contractors not working on the Big Rapids portion of the project, cleanup throughout the project, and failure to obtain permits. The parties also faced significant pressure from the federal government to have the service operational by July 31, 2015—a deadline they met. In the years that followed, the parties continued to communicate about the project and whether they could close out the Contract. In 2016, Casair ultimately hired a third-party engineering firm, Geotech, to review the project. That investigation found many instances of incomplete cleanup, such as exposed infrastructure, including open trenches and fiber-optic cable sticking out of the ground. In April 2017, JDF gave Casair a credit against its fee in recognition of not having properly supervised a contractor. In March 2018, JDF sent an invoice to Casair for work JDF had completed from March to May 2017 involving the review of work performed by a contractor on the project. Steve Meinhardt, president of Casair, sent an e-mail to Robert Fenlason, president of JDF, in July 2019, explaining that Casair would not consider closing out the Contract until Casair had the necessary permits. Fenlason responded, explaining that JDF had contacted municipalities about the permits and had spent significant time reviewing the issues that Geotech had raised. Casair and JDF never closed out their contract.

JDF sued Casair in September 2019, claiming that JDF had completed all of the contracted work and that Casair owed JDF for the work. Casair counterclaimed, alleging, in part, that JDF breached the parties' contract and was liable for professional negligence.

JDF moved for summary disposition in January 2020, arguing that the two-year statutory period of limitations for professional negligence barred Casair's claims because JDF's work on the project ended in 2015. Casair argued in response that JDF was still involved in the project after 2015 and that the parties' contract was not closed, so the statutory period of limitations had not begun to run. The trial court denied JDF's motion. JDF applied for leave to appeal the trial court's denial of its motion, and this Court denied the application.[1]

Casair moved for partial summary disposition in May 2020, arguing that the parties' contract clearly provided that JDF could not charge Casair for an engineering fee that was more than 20% above the estimated cost without a formal contract amendment agreed to by Casair and approved by the USDA. The parties had amended the contract one time, and, considering the maximum value of the contract, payments that Casair had already made to JDF, a credit that JDF issued to Casair, and the available 20% increases, JDF's maximum possible recovery was

---

[1] *Joseph D Fail Engineering Co, Inc v Crystal Automation Sys, Inc*, unpublished order of the Court of Appeals, entered October 6, 2020 (Docket No. 353919).

$38,992.19.  The trial court granted Casair's motion.  JDF applied for leave to appeal the trial court's order, and this Court denied the application.[2]

JDF renewed its motion for summary disposition in October 2021, arguing that Casair's professional-negligence claims subsumed Casair's remaining claims.  The trial court denied JDF's motion.

The jury trial began in November 2022.  During the trial, JDF moved for a directed verdict, arguing that the two-year limitations period barred Casair's negligence claim because there was no evidence that JDF was involved in the project after 2016.  The trial court denied JDF's motion.  The jury found that JDF was liable for professional negligence or malpractice but had not breached the parties' contract, and it awarded Casair $1.5 million in damages.

After trial, Casair moved for judgment notwithstanding the verdict regarding its breach-of-contract claim, arguing that a reasonable person could not disagree that JDF breached its contractual obligations.  JDF also moved for judgment notwithstanding the verdict or a new trial, arguing that the two-year statutory period of limitations barred Casair's professional-negligence claim and that the evidence did not support the damages award.  During a hearing on the motions, the trial court explained that there was evidence about damages at trial, and the trial court could understand how the jury "could have combined certain arguments" to reach the specific amount that it awarded.  Further, the trial court thought that the jury "essentially" found a breach of contract and that there was testimony to support that claim.  The trial court denied JDF's motion and granted Casair's motion to reform the verdict to reflect that JDF had breached the Contract.  JDF now appeals.

II. ANALYSIS

A.  CASAIR'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT

JDF argues that the trial court erred by granting Casair's motion for judgment notwithstanding the verdict.  We review de novo a trial court's decision on a motion for judgment notwithstanding the verdict.  *Sniecinski v Blue Cross & Blue Shield of Mich*, 469 Mich 124, 131; 666 NW2d 186 (2003).  We must view the evidence, and all legitimate inferences from it, in the light most favorable to the nonmoving party.  *Id*.  If reasonable jurors could have honestly reached different conclusions, then the jury verdict must stand.  *Genna v Jackson*, 286 Mich App 413, 417; 781 NW2d 124 (2009).

To establish a breach of contract, Casair needed to demonstrate by a preponderance of the evidence that (1) the parties had a contract, (2) JDF breached the contract, and (3) the breach resulted in damages to Casair.  See *Bank of America, NA v First Am Title Ins Co*, 499 Mich 74, 100; 878 NW2d 816 (2016).  A plaintiff must establish a causal link between the breach and the claimed damages.  *Gorman v Am Honda Motor Co, Inc*, 302 Mich App 113, 118-119; 839 NW2d 223 (2013).  Conversely, "[a] professional malpractice claim is a tort claim predicated on the

---

[2] *Joseph D Fail Engineering Co, Inc v Crystal Automation Sys, Inc*, unpublished order of the Court of Appeals, entered December 23, 2020 (Docket No. 354838).

failure of the defendant to exercise the requisite professional skill." *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 50; 951 NW2d 64 (2020).

As JDF argues, it was possible to reconcile the jury's verdict. Indisputably, the parties had a contract. At issue was whether JDF breached the Contract and caused damages, see *Bank of America*, 499 Mich at 100, and, in this case, reasonable people could differ when determining whether JDF was liable for breach of contract, see *Genna*, 286 Mich App at 417. Although the parties' contract required JDF, for example, to render its services "consistent with sound professional practices," it is possible that the jury found that JDF engaged in "sound professional practices" to the extent necessary to abide by the Contract. The evidence demonstrated that the project outside of Big Rapids, for example, *was* operational. Ronald Mellon, of the USDA, opined that JDF had not performed at the level expected of a professional engineer, including by failing to create punch lists that would track the tasks that the contractors JDF was supervising needed to complete. Although he first testified that JDF breached the Contract, he later clarified that making punch lists was not a contractual obligation but a professional one. Likewise, George Orphan, of Geotech, noted that JDF's invoices were improper but did not violate the Contract.

The jury may also have determined that JDF breached the Contract but that *the breaches* themselves did not *cause* damages. See *Gorman*, 302 Mich App at 118-119. For example, there was conflicting testimony about the cost of issues with the project or whether Casair had received compensation for those issues, including from the contractors or by selling the network. Moreover, it was possible that the jury did not find that certain contractual obligations, such as closing the contract, caused any damages. Because reasonable jurors could have disagreed about whether JDF was liable for breach of contract, it was improper to grant Casair's motion for judgment notwithstanding the verdict as to this count. See *Genna*, 286 Mich App at 417.

## B. MOTION FOR NEW TRIAL

JDF also argues that the trial court erred by denying its motion for a new trial on the basis of the jury's award of damages. We review for an abuse of discretion a trial court's decision whether to grant a new trial. *Kelly v Builders Square, Inc*, 465 Mich 29, 34; 632 NW2d 912 (2001). "A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes." *Rental Props Owners Ass'n of Kent Co v Kent Co Treasurer*, 308 Mich App 498, 531; 866 NW2d 817(2014) (citation omitted). This Court gives significant deference to a jury's ascertainment of damages. *Taylor v Mobley*, 279 Mich App 309, 311; 760 NW2d 234 (2008).

A trial court may grant a new trial when a party's substantial rights were materially affected because the jury awarded "[e]xcessive or inadequate damages appearing to have been influenced by passion or prejudice"; "[a] verdict clearly or grossly inadequate or excessive"; or "[a] verdict or decision against the great weight of the evidence or contrary to law." MCR 2.611(A)(1)(c), (d), and (e). When the trial court rules on a motion for a new trial or to amend the judgment, the "court shall give a concise statement of the reasons for the ruling." MCR 2.611(F). "When a plaintiff proves injury, recovery is not precluded simply because proof of the amount of damages is not mathematically precise." *Severn v Sperry Corp*, 212 Mich App 406, 415; 538 NW2d 50 (1995). "Although damages based on speculation or conjecture are not recoverable, damages are not

speculative merely because they cannot be ascertained with mathematical precision." *Ensink v Mecosta Co Gen Hosp*, 262 Mich App 518, 525; 687 NW2d 143 (2004) (cleaned up).

In this case, although there was no testimony about specific damages of $1.5 million, there was testimony about various amounts of damages and no basis to find that the jury failed to consider the evidence when determining its award. There was testimony that irregular construction diminished the value of the conduits and that contractors increased the cost of construction by boring instead of plowing. Further, there was evidence that Casair lost revenue because the Big Rapids portion of the project was not completed earlier and that Casair spent significant money cleaning up the project. Casair also faced a lawsuit due to contractors cutting a sewage line, and the project was significantly over budget. Accordingly, this award was not clearly excessive. Instead, the judgment was within the range of the evidence about damages. See *Leavitt v Monaco Coach Corp*, 241 Mich App 288, 303-304; 616 NW2d 175 (2000). That Casair could not precisely quantify its injury does not preclude recovery. See *Severn*, 212 Mich App at 415. Further, the trial court instructed the jury that it could not speculate about the amount of damages, and this Court presumes that a jury follows its instructions. See *Zaremba Equip, Inc v Harco Nat Ins Co*, 302 Mich App 7, 25; 837 NW2d 686 (2013).

JDF also argues that the trial court's reasoning for denying its motion for relief on this basis did not constitute a concise statement of the reasons for its ruling. When denying JDF's request for a new trial on the basis of the jury's award, the trial court stated that it did not find "that the damages were completely arbitrary" when "there were multiple arguments that were made to the jury as to how much the damages were." The trial court stated that the jury came "back with 1.5 [million], and it is a specific amount, but [the trial court] could see where [the jury], you know, could have combined certain arguments." This constituted a concise explanation of the trial court's decision. Regardless, an "absence of a court's reasons for denying a motion for a new trial does not necessarily require reversal or a remand." *Tempo, Inc v Rapid Electric Sales & Serv, Inc*, 132 Mich App 93, 98; 347 NW2d 728 (1984). JDF has not established that remand is necessary for the trial court to more fully explain its rationale or that the trial court abused its discretion by denying JDF's motion for a new trial.

## C. STATUTE OF LIMITATIONS

JDF also argues that the trial court erred by failing to dismiss Casair's claims on the basis of the statute of limitations in response to JDF's motions for summary disposition, directed verdict, and judgment notwithstanding the verdict, which all raised this defense.

Summary disposition under MCR 2.116(C)(7) is appropriate when a lawsuit occurs beyond the statute of limitations. In the absence of a disputed factual issue, the determination whether a limitations period bars a claim is a question of law that this Court reviews de novo. *Young v Sellers*, 254 Mich App 447, 450; 657 NW2d 555 (2002). We also review de novo a trial court's decision on a motion for summary disposition. *Id*. "When reviewing a motion for summary disposition under MCR 2.116(C)(7), a court must accept as true a plaintiff's well-pleaded factual allegations, affidavits, or other documentary evidence and construe them in the plaintiff's favor." *Jackson Co Hog Producers v Consumers Power Co*, 234 Mich App 72, 77; 592 NW2d 112 (1999). If there are no factual disputes and reasonable minds cannot differ on the legal effect of those facts,

then the issue is a question of law for the trial court. *Id*. Summary disposition is inappropriate if a material factual dispute exists. *Id*.

We also review de novo a trial court's decision on a motion for a directed verdict. *Krohn v Home-Owners Ins Co*, 490 Mich 145, 155; 802 NW2d 281 (2011). The trial court should grant the motion only if the evidence, viewed in the light most favorable to the nonmoving party, "fails to establish a claim as a matter of law." *Id*. We review all the evidence presented up to the time of the motion to determine whether there was a question of fact for the fact-finder. See *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 455; 750 NW2d 615 (2008). When reasonable jurors could reach different conclusions on the claim, then this Court may not substitute its judgment. *Id*. It is the role of a fact-finder to determine the weight and credibility of the evidence. See *King v Reed*, 278 Mich App 504, 522; 751 NW2d 525 (2008).

Generally, a malpractice claim has a two-year statutory period of limitations. MCL 600.5805(8). Under MCL 600.5805(13), an action against a professional engineer "is an action charging malpractice subject to the period of limitation contained in subsection (8)." MCL 600.5838(1) provides that

> a claim based on the malpractice of a person who is, or holds himself or herself out to be, a member of a state licensed profession accrues at the time that person discontinues serving the plaintiff in a professional or pseudoprofessional capacity as to the matters out of which the claim for malpractice arose, regardless of the time the plaintiff discovers or otherwise has knowledge of the claim.

"Accrual of a malpractice action, for purposes of the two-year limitation period, occurs on the last day of professional service." *Gebhardt v O'Rourke*, 444 Mich 535, 543; 510 NW2d 900 (1994).

Here, the record shows that the parties continued to have a professional relationship up to the beginning of the lawsuit; accordingly, Casair's claims were not time-barred.[3] For instance, Casair presented e-mails between the parties, including the e-mail that Meinhardt, of Casair, sent to Fenlason, of JDF, in November 2017, indicating that Casair was still cleaning up and correcting the project as the USDA required. JDF sent an invoice to Casair in March 2018 for work JDF had completed from March to May 2017 supervising a contractor. Further, Casair presented the e-mail that Meinhardt sent to Fenlason on July 29, 2019, in which Meinhardt explained that Casair would not close the Contract until it had obtained required permits. Under the parties' contract, JDF was responsible for obtaining those permits. Fenlason responded to Meinhardt's e-mail, explaining that JDF had contacted the municipalities regarding the permits and had "spent many hours reviewing" Geotech's work to address the alleged issues in the project, but JDF did not charge Casair for that work or JDF's trips to Michigan. Casair also presented an affidavit from Meinhardt,

---

[3] Because we conclude that Casair's claims were not time-barred under the two-year limitations period for professional negligence claims, we need not consider JDF's argument that aspects of Casair's breach of contract claims should be subjected to the shorter limitations period for professional negligence because, in any event, Casair's claim was timely.

in which he explained that JDF had not yet submitted certifications required for the Contract to be closed.

In the context of an attorney-client relationship, we have held that "[a] lawyer discontinues serving a client when relieved of the obligation by the client or the court, or upon completion of a specific legal service that the lawyer was retained to perform." *Maddox v Burlingame*, 205 Mich App 446, 450; 517 NW2d 816 (1994) (citation omitted). Nothing analogous to such a development occurred between July 2015 and JDF's lawsuit to indicate the termination of the relationship between JDF and Casair. JDF argues that the billing, permitting, and attempts to close out the Contract were ministerial or follow-up activities. However, the permitting itself was a major part of this project, particularly considering the potential consequences of not obtaining permits, which could have included a municipality later requiring that Casair move or remove the cable.

Although JDF did not charge Casair for its follow-up activities related to the Geotech review of the project, this situation differs from that in *Bauer v Ferriby & Houston, PC*, 235 Mich App 536, 540; 599 NW2d 493 (1999), on which JDF relies. In *Bauer*, the defendant represented the plaintiff through July 1994, but, in February 1996, the plaintiff's new attorney asked the defendant to submit an amended order to resolve an issue in the 1994 order. *Id*. at 537. The defendant attorney tried to research and remedy the error, but the attempts were not successful. *Id*. at 537-538. This Court held that the plaintiff's April 1997 lawsuit was untimely because the defendant's 1996 unpaid efforts were in response to the "complaint about an earlier, terminated representation, not as legal service in furtherance of a continuing or renewed attorney-client relationship." *Id*. at 537, 540. In this case, JDF and Casair never terminated their relationship, and JDF's actions between 2015 and 2019 were ongoing and part of its initial work for Casair.

There is no question in this case that the two-year limitations period applied to Casair's claims against JDF as to its professional obligations. See MCL 600.5805(8) and (13). The evidence demonstrates that JDF was still serving in its professional capacity to Casair within two years of Casair's counterclaim and supports the trial court's denial of JDF's motion for summary disposition on that basis.[4]

The trial court also did not err by denying JDF's motions for directed verdict or judgment notwithstanding the verdict, for many of the same reasons as with JDF's motion for summary disposition. "A party may move for a directed verdict at the close of the evidence offered by an opponent." MCR 2.516. Motions for a directed verdict or judgment notwithstanding the verdict are "essentially challenges to the sufficiency of the evidence in support of a jury verdict in a civil case." *Nahshal v Fremont Ins Co*, 324 Mich App 696, 719; 922 NW2d 662 (2018) (cleaned up). A party may, within 21 days after entry of judgment, move the trial court to set aside a verdict and judgment. MCR 2.610(A)(1). In ruling on a motion for judgment notwithstanding the verdict, the trial court must give a concise statement of its reasons for its decision. MCR 2.610(B)(3). See

---

[4] Because we hold that the trial court did not err in denying JDF's motion for summary disposition as to Casair's malpractice claim, we need not address JDF's argument that Casair's breach of contract claim is subsumed into its malpractice claim because, regardless, Casair's claim was timely.

also *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 283; 602 NW2d 854 (1999).

With these motions, the trial court had additional information to consider as compared to when it decided JDF's motion for summary disposition, but the additional information did not demonstrate that JDF was entitled to relief. Testimony demonstrated that the parties continued to communicate until shortly before JDF sued Casair. When viewed in the light most favorable to Casair, the trial court did not err by finding that JDF was not entitled to judgment in its favor. See *Krohn*, 490 Mich at 155.

D. DAMAGE CAP

Finally, JDF argues that the trial court erred by limiting the potential recovery available to JDF to $38,992.19 based on its interpretation of the Contract.[5] As an initial matter, because the jury found in Casair's favor, it is not clear what, if any, effect the challenged ruling had on the proceedings below. Nevertheless, "[w]e review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020). This Court reviews the submitted evidence in a light most favorable to the nonmoving party. *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021). "Summary disposition is appropriate when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Id.* (quotation marks and citation omitted). "MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

Courts must enforce unambiguous contracts according to the contract terms. *Hamade v Sunoco, Inc (R & M)*, 271 Mich App 145, 166; 721 NW2d 233 (2006). When contract language is subject to multiple interpretations, however, it is ambiguous. *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020). "The primary goal of contract construction is to give effect to the parties' intent." *Id.* Accordingly, this Court gives the language of an unambiguous contract its plain and ordinary meaning. *Id.*

In this case, § 3.17 listed a series of RUS Forms that were "made a part of this contract" by reference. Section 3.19 of the Contract provided that JDF would "provide an initial estimate, monthly updates and a final statement of engineering fees," which was to be communicated "using RUS Form 506, Statement of Engineering Fees." Under § 3.20 of the Contract, "[w]hen the total engineering fee exceeds the initial contract estimate by 20% or more, an amendment to the contract shall be required as set forth in 7 CFR Part 1753." Under 7 CFR 1753.11(a)(2), a borrower must obtain approval from the Rural Utilities Service before executing a contract amendment if an "amendment increases the amount to be paid under the contract by 20% or more." Further, 7 CFR 1753.11(d) provides, "Upon execution of any amendment that causes the amended contract to exceed the original contract amount by 20% or more, three copies of the amendment shall be submitted to RUS for approval."

---

[5] JDF challenges the trial court's interpretation of the Contract's language but not its mathematical calculation, so we have not scrutinized those figures.

A plain reading of the original contract and the one amendment demonstrates that JDF's engineering fee charged to Casair could not be more than 20% higher than the estimate without an amendment that RUS approved. See *Total Quality, Inc*, 332 Mich App at 694. When there were no further amendments to the Contract, the trial court properly capped JDF's compensation. JDF points to § 5 of RUS Form 217g, which provided a maximum compensation of $166,718 for certain activities and said that this amount could not be exceeded "unless said amount has been increased by a contract amendment," and argues that only this specific *segment* of its engineering fee was subject to the 20% cap. But that specific provision of a form that is incorporated into the contract by reference in § 3.17 does not change § 3.20's global requirement that any increase in the engineering fee in excess of 20% had to be adopted through an amendment to the contract. In other words, RUS Form 217g's condition operated within that requirement, not as an exception to it.

JDF also argues that 7 CFR 1753.11(a)(2) and (d) conflict about whether the parties needed to obtain RUS approval before or after executing an amendment. It is clear, however, from a complete reading of 7 CFR 1753.11 that RUS must approve amendments to contracts that increase the compensation under the Contract by 20% or more before those amendments are valid. Moreover, regardless of when the parties were to send the Contract to RUS, JDF never presented any evidence of the existence of another amendment even though the contract expressly required that a change in excess of 20% be achieved by amendment. In other words, regardless of any uncertainty about whether RUS needed to approve such a change, § 3.20 at minimum required JDF and Casair to execute an amendment.

JDF also argues that Casair's "interpretation would allow the owner to avoid paying for work actually performed by the engineer by unilaterally deciding after the work is done to refuse to enter into a contract amendment." JDF, however, presumably could have negotiated with Casair *before* completing an excess of work, and the parties *had* already agreed to one amendment. Instead, JDF did not seek an additional amendment of the Contract. The trial court did not err by granting Casair summary disposition as to potential damages.

The trial court erred by granting Casair's JNOV motion and reforming the jury's verdict to ascribe the damages awarded to a breach of contract claim the jury clearly rejected. We reverse its decision accordingly and remand for correction of that error. In all other respects, we affirm. We do not retain jurisdiction.

/s/ Matthew S. Ackerman
/s/ James Robert Redford
/s/ Kathleen A. Feeney